IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HERMINIA PENA,
          Plaintiff,

v.

WINCO FOODS, LLC, an Idaho
Corporation,
          Defendants.

CV. 04-1827-AS

OPINION AND ORDER

ASHMANSKAS, Magistrate Judge:

    Plaintiff Herminia Pena filed this action alleging that defendant WinCo Foods, LLC. ("WinCo"), Pena's former employer, violated O.R.S. 659A.040 when it terminated Pena's employment after Pena reported a work-related injury. WinCo has moved for summary judgment and to strike a portion of Judy Satchell's declaration submitted by Pena in opposition to the Motion for Summary Judgment. For the reasons set forth below, the court denies WinCo's Motion to Strike and Motion for Summary Judgment.

## MOTION TO STRIKE

In support of her opposition to WinCo's Motion for Summary Judgment, Pena has submitted the declaration of Judy Satchell, a former WinCo employee. In her declaration, Satchell makes reference to another former WinCo employee, Ms. Rasthoff, who Pena claims was terminated for filing a workers compensation claim. Specifically, Satchel states,

> Ms. Rashoff was an outstanding worker. I never heard anyone complain about her work performance and was shocked when Flo Bieler terminated her one day after she provided Ms. Bieler with a note from her physician stating that she had an allergic reaction to the chemical used for cleaning the oven.

Satchell Declaration at ¶ 5. WinCo has moved to strike paragraph five, arguing that it is based on inadmissible hearsay. The court disagrees. While Satchell is testifying as to the contents of the physician letter, her testimony is not offered to prove the truth of the matter asserted, that Rasthoff did have an allergic reaction to the oven cleaner. Rather, the testimony is offered to show the effect that the contents of the note had on the recipient, WinCo. The court will consider paragraph five of the Satchell declaration in ruling on WinCo's Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. Id. at 324. A scintilla of evidence, or evidence that is

merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir.), cert. denied, 493 U.S. 809 (1989).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987). The court must view the inferences drawn from the facts in the light most favorable to the non-moving party. Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The Ninth Circuit, however, has stated, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc., 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988). When the non-moving party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. Id.

Special rules of construction apply to evaluating summary judgment motions: the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-55 (1990). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097 (2000).

The Ninth Circuit has reiterated that a high standard exists for granting of summary judgment in employment discrimination cases. Schnidrig v. Columbia Machine, Inc., 80 F.3d 1406, 1410 (9th Cir. 1996) (holding that courts should require very little evidence to survive

summary judgment in a discrimination case, because the ultimate question is one that can be resolved only through a searching inquiry--one that is most appropriately conducted by the fact-finder, upon a full record) (citations omitted); see also Lam v. University of Hawaii, 40 F.3d 1551, 1563 (9th Cir. 1994) (quoting Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1111 (9th Cir. 1991)).

## FACTS

Because all material facts must be viewed in the light most favorable to the non-movant, the evidence is viewed in the light most favorable to plaintiff. A review of the parties' submissions, including affidavits, deposition excerpts, and exhibits reveals the following material facts.

Pena was hired to work as a deli clerk for WinCo in early March 2003. Before beginning her employment, Pena went through an orientation and training session. During that session, Pena signed a statement acknowledging that she had read and understood and would comply with WinCo's personnel policies, including the Hourly Employee Working Conditions and Wages Agreement ("Employment Agreement"). Plaintiff does not recall signing the statement or reviewing the Employment Agreement.

The Employment Agreement provides that all new WinCo Employees must complete one hundred and eighty days of continuous service with WinCo before attaining seniority. The one hundred and eighty day period is considered an orientation period, and, pursuant to the Employment Agreement, employees may be terminated for any reason during that time:

> Employees in their orientation period may be terminated for any
> reason without prior warning. Orientation employees shall not

> have grievance rights covered by Article P except in cases
> involving alleged violations of Federal or State laws.

Employment Agreement, section F, paragraph 2. The Employment Agreement also provides for a progressive discipline policy leading up to termination,

> WinCo's policy is not to discharge any employee for substandard
> performance without first calling it to their attention. An instance
> of inadequate performance or improper activity will be discussed
> with the individual by the store manager, assistant manager, and/or
> department manager. A memorandum of this discussion will be
> placed in the employee file which the employee will be asked to
> acknowledge. A second instance of the same or any other type
> will result in written warning which the employee will be asked to
> acknowledge. A third instance of any violation of company
> policies or any type of inadequate performance can result in
> termination. The appropriate level of corrective action may vary in
> individual cases depending on such factors as: the employee's
> record, including the length of service; the nature and severity of
> the offense; and the impact of the offense on the company's
> business.

Employment Agreement at section C, paragraph 1.

On August 19, 2003, Pena had an appointment with her physician, Dr. Dahles. Dr. Dahles examined Pena and noted that Pena appeared to be developing trigger thumb in her left thumb. Pena and Dr. Dahles completed a workers' compensation Worker's and Physician's Report and Dr. Dahles instructed Pena to obtain additional workers' compensation forms from WinCo. Pena testified she told Dr. Dahles that she was afraid of losing her job is she reported the injury.

On August 28 , Pena informed WinCo's store secretary, Leena Wirkkala, that she was experiencing pain in her thumb, and that it had developed while opening chicken necks in the deli. Pena testified at deposition that she told Wirkkala she had already seen the doctor, she

would require surgery to correct the injury, and her doctor had instructed her to get the required workers' compensation forms from WinCo. Wirkkala began filling out a WinCo Accident Analysis form but did not fill out the workers' compensation Employer's Report form. Pena testified that Wirkkala refused to give Pena the workers' compensation forms until Pena brought a note from her doctor saying that Pena could not work. Wirkkala did not complete the Accident Analysis form and workers' compensation Employer's Report for Pena's injury until October 3, 2003, after she was instructed to do so by a WinCo human resources representative.

Pena's supervisor at WinCo was Deli Manager Florence Bieler. A few days after Pena met with Wirkkala, Bieler stopped Pena and asked how she hurt her hand.

On September 7, 2003, shortly before Pena's orientation period was to end, Pena was told by Cassie Oretga, another WinCo Manager, that Pena's employment with WinCo was terminated. Pena testified at deposition that she specifically asked Bieler, who was also present at the meeting, why she was being terminated but that Bieler stared at the floor and did not respond. Ortega then asked Bieler to give a reason for the termination. When Bieler did not answer, Ortega finally said "well, let's just say probation period. It didn't work out. We have to let you go." Pena testified that Ortega then said to Bieler, "since you are not giving me a reason, that's what I am going to say." WinCo produced a termination form, signed by Pena, stating that she was being terminated as an orientation employee for failure to meet the standards to maintain employment at WinCo. Pena claims she did not sign the document.

On September 10, 2003, Pena filed a workers' compensation claim for the injury to her left thumb.

DISCUSSION

(a)     Legal Standard

Oregon law prohibits an employer from discriminating against an employee who files for workers' compensation benefits:

> It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws.

O.R.S. 659A.040(1). In order to establish a prima facie case of workers' compensation discrimination, Pena must show that 1) she invoked the workers' compensation system; 2) she suffered an adverse change in the tenure, terms, or conditions of her employment; and 3) her employer imposed the adverse change because she invoked the workers' compensation system. Stanich v. Precision Body and Paint, Inc., 151 Or. App. 446, 457 (1997).

Because this is a diversity case addressing a state law claim the court applies state substantive law and federal procedural law. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 426 (1996). The McDonnell Douglas burden-shifting scheme is federal procedural law. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Snead v. Metropolitan Pro. & Casualty Ins. Co., 237 F.3d 1080, 1092 (9th Cir. 2001). Plaintiff must first present a prima facie case. The burden of production shifts to the defendant employer to provide legitimate, nondiscriminatory reasons for the employer's conduct. McDonnell Douglas, 411 U.S. at 802. If the employer is able to meet this burden, the burden of production returns to the plaintiff to prove that the employer's stated reasons are pretextual. Burdine, 450 U.S. at 253.

(b) <u>Analysis</u>

(1) *Prima facie* <u>case</u>

WinCo argues that Pena is unable to establish a *prima facie* case because she cannot establish the third element, that WinCo terminated Pena because she invoked the workers' compensation system. An employer is free to discharge an employee for cause, notwithstanding the existence of a workers' compensation claim, so long as the discharge is not motivated by retaliation. <u>Hardie v. Legacy Health System</u>, 167 Or. App. 425, 433 (2000). Viewing the evidence in the light most favorable to Pena, the court finds that Pena has presented sufficient circumstantial evidence of discriminatory motive. Specifically, Pena points to the timing of her termination, ten days after reporting her injury to Wirkkala. At this stage of the analysis, that evidence is sufficient to raise the inference of discriminatory motive.

(2) <u>Legitimate non-discriminatory reason</u>

Because plaintiff has met the burden of presenting a *prima facie* case, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the employment action. <u>McDonnell Douglas</u>, 411 US at 802. WinCo asserts that Pena was terminated during her orientation period because her performance was substandard. Bieler states that she made the decision to terminate Pena because Pena's work was substandard. Specifically, Bieler testified that Pena was slow and arrived late to work on several occasions. Bieler claims that other employees were required to assist Pena in the deli section in order to help Pena catch up with her work. WinCo submitted declarations by two of Pena's co-workers, Christopher Eagon and Patrick Sperry, stating that Pena was slow in completing her tasks and that they had to help her get things done. WinCo argues that Pena was terminated in accordance with WinCo

policy, which allows managers to terminate orientation employees for any reason without prior warning. Because WinCo has stated a legitimate, non-discriminatory reason for terminating Pena's employment, the burden shifts back to Pena to demonstrate that the reason proffered was merely a pretext for a discriminatory motive.

(3) Pretext

Viewing the evidence in the light most favorable to Pena, the court finds that Pena has presented sufficient evidence from which a reasonable juror could find that WinCo's reason for terminating Pena was pretextual.

In her declaration, Pena denies that she was tardy. At deposition, Pena testified that she often arrived at work as many as two hours early in case there was an opportunity to help out. Pena has also stated in her declaration that: (1) she never worked the same hours as Sperry; and (2) Pena only worked with Eagon when she was asked to work in the seafood department because it was busy, or Eagon was asked to work in the deli for the same reason. To further rebut the testimony of Bieler, Sperry, and Eagon, Pena has offered declarations from Judy Satchell and Rhonda Martinson, both of whom worked in the deli department with Pena. Satchell stated that Pena did an excellent job working in the deli and Satchell did not hear any complaints about Pena's performance or timeliness. Satchell attached a copy of a letter of recommendation she wrote for Pena in which she stated that Pena was an exceptional employee and was always on time. Martinson echoed Satchell, stating that Pena was very hardworking and that Martinson had heard no complaints about Pena's work.

Pena offered her own testimony that Ortega told Pena she was being terminated for substandard performance only after Bieler refused to provide a reason for Pena's termination.

Further, while WinCo claims that orientation employees may be terminated for any reason without prior warning, Ortega testified at deposition that the progressive discipline policy applied to all employees, even employees in their orientation period. Later in the deposition, after a meeting with her attorney, Ortega corrected her testimony and stated that the progressive discipline policy did not apply to orientation employees.

Bieler claimed that she made the decision to terminate Pena in June, before Pena had reported her injury, but did not terminate Pena at that point because the deli was short-staffed. On June 7, however, Bieler terminated another deli employee because the deli budget would not cover the number of employees currently working there.

Pena also presented evidence creating a question of fact as to whether WinCo deterred employees from filing workers' compensation claims and then retaliated against those employees who did file a claim. For example, Pena testified that Wirkkala refused to give Pena the workers' compensation forms at their August 28 meeting, despite the fact that WinCo policy dictated that she fill out the accident forms upon receiving a doctors note or at the request of an employee. Pena also testified that Bieler's already poor treatment of Pena worsened after Bieler learned that Pena had reported her injury to Wirkkala. WinCo argues that this evidence should be disregarded because Pena has failed to set forth any specific examples of this alleged poor treatment. Because this is a motion for summary judgment, however, the court must view the evidence in the light most favorable to Pena, and draw all reasonable inferences in her favor. Lytle, 494 U.S. at 554-55.

Disputes about material facts and credibility determinations must be resolved at trial, not on summary judgment. Viewing the foregoing evidence in the light most favorable to plaintiff, a

trier of fact could find that Pena was terminated because she invoked the rights and benefits of the workers' compensation system. The court finds that Pena has presented sufficient evidence to create a question of fact as to WinCo's motive and, therefore, survive a summary judgment motion.

CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (No. 19) and Motion to Strike (No. 36) are DENIED.

Dated this 3rd day of October, 2005.

    /s/ Donald C. Ashmanskas
Honorable Donald C. Ashmanskas
U.S. Magistrate Judge